[No. G041860. Fourth Dist., Div. Three. May 26, 2010.]

RHONDA SCOTT, Plaintiff and Appellant, v.
RUSSEL THOMPSON et al., Defendants and Respondents.

## Counsel

Law Offices of Fred J. Knez and Fred J. Knez for Plaintiff and Appellant.

Callahan & Blaine, Daniel J. Callahan, Sarah C. Serpa and Jill A. Thomas for Defendant and Respondent Russel Thompson.

Kutak Rock, Edwin J. Richards and Christopher D. Glos for Defendant and Respondent City of Dana Point.

Ford, Walker, Haggerty & Behar, K. Michele Williams and Dina B. Dreizler for Defendants and Respondents Tammy Jo Booth and Christine R. Booth.

## Opinion

**ARONSON, J.**—Rhonda Scott appeals from the trial court's entry of judgment dismissing her claims for wrongful death, negligence, and dangerous condition of public property stemming from a traffic accident in which an intoxicated driver killed her half brother, Michael Thompson, as he rode his bicycle in the designated lane along the Pacific Coast Highway. The trial court consolidated Scott's suit with a similar one already filed by the decedent's presumed father, Russel Thompson,[1] against the driver, Tammy Jo Booth, the vehicle's owner, Christine R. Booth, and the City of Dana Point (collectively, defendants). After consolidation, Scott amended her complaint to seek a declaratory judgment rebutting Thompson's status as Michael's presumed father, which would leave Scott, under various statutory provisions including the rules of intestate succession, as Michael's sole heir entitled to sue for his wrongful death and related actions.

The trial court granted Scott's motion to compel blood testing, which revealed Thompson was not Michael's biological father. Thompson nevertheless sought summary adjudication of Scott's plea for declaratory judgment, contending he remained Michael's presumed father despite the test results. Scott did not dispute Michael was born during Thompson's marriage to Michael's mother or that Thompson received Michael into his home, provided for him for a number of years before and after Thompson's eventual divorce from Michael's mother, or that Thompson held Michael out as his own son.

---

[1] For clarity, ease of reference, and without intending any disrespect, we subsequently refer to the decedent, Michael Thompson, by his first name because he shared the same surname with his presumed father. (See *In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1704, fn. 1 [30 Cal.Rptr.2d 306].)

The trial court granted Thompson's motion for summary adjudication, explaining, "Even if Russel[] Thompson is not the biological father of Michael Thompson . . .—and that's what the DNA showed—he is presumed to be the father by virtue of what happened after the birth and therefore he is entitled to have the rights of a father." Because California's wrongful death statute vests priority and exclusive standing in a decedent's surviving parent over a surviving sibling (see Code Civ. Proc., § 377.60, discussed *post*), the trial court subsequently granted summary judgment motions in favor of defendants and Thompson against Scott. We stayed the proceedings below to consider on appeal her assertion the DNA test results vested her alone with standing to sue for Michael's death. Alternatively, she argues triable issues of material fact exist on whether she rebutted Thompson's status as a presumed father. Thompson contends Scott lacked standing to challenge his paternity and therefore failed to rebut it. As we explain, we conclude Thompson is correct. Consequently, Scott had no standing to assert her wrongful death and related causes of action, and the trial court did not err in entering judgment against her and dismissing her claims. We therefore affirm the judgment.

I

DISCUSSION

Because our introduction disclosed the pertinent facts and procedural history, we turn immediately to the appeal's legal issues. Scott asserts the trial court erred in granting summary judgment in favor of respondents. We review the summary judgment motions de novo to determine whether there is a triable issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see *Hailey v. California Physicians' Service* (2007) 158 Cal.App.4th 452, 462 [69 Cal.Rptr.3d 789].) Lack of standing is a fatal jurisdictional defect that requires judgment against the plaintiff. (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 804, 813, 820 [66 Cal.Rptr.3d 543].) When, as here, the facts relevant to standing are undisputed, "[s]tanding is a question of law that we review de novo." (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299 [32 Cal.Rptr.3d 656].)

Thompson contends Scott lacked standing to challenge his role as Michael's presumed father, and therefore lacked standing to pursue a claim for Michael's wrongful death. We agree.

■ "In California, an action for wrongful death is governed solely by statute, and the right to bring such an action is limited to those persons identified therein." (*Jackson v. Fitzgibbons* (2005) 127 Cal.App.4th 329, 334

[25 Cal.Rptr.3d 478].) Put another way, "[b]ecause the right to sue for wrongful death damages is strictly a creature of statute and exists only so far and in favor of such persons as the Legislature has declared [citation], 'standing' among multiple claimants is determined by statutory rank." (*Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 789 [6 Cal.Rptr.3d 650] (*Nelson*).) The wrongful death statute vests standing in the following persons or a personal representative on their behalf: "The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession." (Code Civ. Proc., § 377.60, subd. (a); see *Gordon v. Reynolds* (1960) 187 Cal.App.2d 472, 474 [10 Cal.Rptr. 73] [either administratrix or heirs may sue for wrongful death, but not both].) It is undisputed Michael died without a spouse, domestic partner, or issue; consequently, the rules of intestate succession control standing here.

■ The Probate Code provides that, absent a surviving spouse, domestic partner, or issue, the decedent's intestate estate passes "to the decedent's *parent or parents equally*" (Prob. Code, § 6402, subd. (b)) or, "[i]f there is no surviving . . . parent, to the issue of the parents" (Prob. Code, § 6402, subd. (c))—in other words, to the decedent's siblings. Surviving heirs are "those who outlive the decedent." (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1441 [111 Cal.Rptr.2d 534].) The question therefore is whether Michael had any surviving parents; if not, the right to assert a wrongful death cause of action would pass to his sister, Scott. (See generally *Lewis v. Regional Center of the East Bay* (1985) 174 Cal.App.3d 350, 353 [220 Cal.Rptr. 89] [intestacy statute, as incorporated by wrongful death statute, accords parents priority over more remote relatives in bringing wrongful death action].)

■ It is undisputed that Michael's mother predeceased him. A "stepparent" or "foster parent" may qualify as a parent for purposes of intestate succession in some instances (Prob. Code, § 6454), but no party asserted Thompson or another man or woman played these roles in Michael's life. As pertinent here, the Probate Code provides that "for the purpose of determining intestate succession," "a relationship of parent and child exists . . . in the following circumstance[]: [¶] . . . between a person and the person's natural parents, regardless of the marital status of the natural parents." (Prob. Code, § 6450.) Probate Code section 6453 specifies in relevant part: "For the purpose of determining whether a person is a 'natural parent' as that term is used in this chapter: [¶] (a) A natural parent and child relationship is established where that relationship is presumed and not rebutted pursuant to

the Uniform Parentage Act (Part 3 (commencing with Section 7600) of Division 12 of the Family Code)." (Cf. Prob. Code, § 54 [defining, in a circular fashion, a "parent" as "any individual entitled to take as a parent under this code by intestate succession from the child whose relationship is involved"].) Thus, determining priority under the chain of intestate succession requires us to turn, in the circumstances presented here, to the Uniform Parentage Act (UPA; Fam. Code, § 7600 et seq.).

As our Supreme Court has explained, the UPA "provides the framework by which California courts make paternity determinations." (*Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 937 [72 Cal.Rptr.2d 871, 952 P.2d 1139] (*Dawn D.*).) Under the UPA, as enacted in Family Code section 7611, a man is presumed the natural father of a child born during, or within 300 days after the termination of, his marriage to the child's mother.[2] (§ 7611(a).) A man also attains the status of presumed father if he receives the child into his home and openly holds the child out as his natural son or daughter. (§ 7611(d).) There is no dispute that, by each of these provisions, Thompson is presumed to be Michael's father.

Specifically, Michael was born in October 1972 during Thompson's marriage to Michael's mother—five months into that marriage to be exact—and Scott does not dispute Thompson thereby qualified as Michael's presumed father under section 7611(a). (See generally *Dawn D., supra,* 17 Cal.4th at pp. 937–938, 942–944 [husband qualified by marriage as presumed father; court held that, absent relationship with child, biological father had no statutory standing or due process right to challenge husband's presumed father status].) Also, Scott does not dispute that Thompson received Michael into his home and held him out as his natural son during Michael's early years, thereby qualifying as his presumed father under section 7611(d). Instead, she asserts Thompson provided little or no financial support to Michael after his mother married Raymond Rothweiler when Michael was six or seven years old. Scott contends Thompson had limited contact with Michael as he grew older and that Rothweiler, more than Thompson, acted as a true and consistent father figure for Michael, though she admits Rothweiler did not hold Michael out as his son. She also points to the results of the blood test the trial court ordered upon her motion to compel.

The issue may appear to be whether a triable issue of fact exists on whether Thompson, in effect, "lost" his presumed father status, i.e., whether Scott successfully rebutted the dual paternity presumptions arising in Thompson's favor under section 7611. (But see *In re Nicholas H.* (2002) 28 Cal.4th 56, 69 [120 Cal.Rptr.2d 146, 46 P.3d 932] [barring result of genetic

---

[2] (All further statutory citations are to the Family Code unless noted; for convenience, we will refer to § 7611 subdivisions as follows, for example, § 7611(a).)

test to rebut presumed fatherhood in dependency case]; see also *In re J.O.* (2009) 178 Cal.App.4th 139, 150 [100 Cal.Rptr.3d 276] [man's later failure to maintain contact or provide support furnishes no basis for rebutting § 7611(d) paternity presumption, at least in absence of competing presumed father].) Section 7612, subdivision (a) states that "a presumption under [s]ection 7611 is a rebuttable presumption affecting the burden of proof and may be rebutted *in an appropriate action* only by clear and convincing evidence." (Italics added.) The parties dispute whether this is an appropriate action in which to rebut Thompson's presumed paternity, but we need not reach that issue. The issue is not one of appropriate actions, but rather appropriate parties. Simply put, a more basic and, in this case dispositive, issue is whether Scott had standing to attempt to rebut the presumption of Thompson's fatherhood.

■ To resolve the standing issue, we turn to the express provisions the Legislature has made in the UPA for challenges to a man's presumed paternity, codified at section 7630. In evaluating section 7630, as with any other enactment, "[i]f the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Estate of Griswold* (2001) 25 Cal.4th 904, 911 [108 Cal.Rptr.2d 165, 24 P.3d 1191] [determining rightful intestacy heir under Prob. Code, § 6452].)

■ Here, section 7630, subdivision (b) provides: "Any interested party may bring an action at any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under subdivision (d) or (f) of [s]ection 7611." By its terms, this provision applies to challenges to paternity presumed under section 7611(d), not under section 7611(a). As to the former, the parties do not discuss whether Scott qualified as an "interested party" to attack the presumption that arose when Thompson held himself out as Michael's father and received him into his home. But even if we were to determine Scott qualified as an interested party to make this attack, based on her interest in unseating Thompson as Michael's presumed father to displace him in the chain of intestate succession, the issue of whether she had standing to rebut Thompson's paternity arising under the marital presumption in section 7611(a) would remain.

Section 7630, subdivision (a) vests standing to determine paternity under the marital presumption in a "child, the child's natural mother, a man presumed to be the child's father . . . , an adoption agency to whom the child has been relinquished, or a prospective adoptive parent of the child" to challenge presumed fatherhood established under section 7611(a)'s marital

presumption.[3] Scott does not fall within any of these categories. (See *Nelson, supra*, 113 Cal.App.4th at p. 789 [wrongful death plaintiff must plead and prove standing].) Moreover, section 7630, subdivision (a)(2) limits challenges to paternity presumed under section 7611(a) to "a reasonable time after obtaining knowledge of relevant facts." But while Scott hints in her briefs that she, Michael, and his family knew during Michael's childhood that Thompson was not Michael's birth father, Scott fails to explain how her present challenge falls within section 7630, subdivision (a)(2)'s time limitation. (See *In re Estate of Jotham* (Minn. 2006) 722 N.W.2d 447, 452 (*Jotham*) [UPA's statute of limitations and standing requirements precluded a sibling's "attempt[] to rebut a presumption of paternity for intestacy purposes"].)

*Jotham*, while not controlling, is instructive. There, in rejecting a sibling's probate challenge concerning a half sister's intestacy share, the court observed: "We do not believe that the legislature, which has unmistakably expressed its desire to foster and protect a child's legitimacy, meant in [the UPA] to permit an individual to challenge a sibling's parentage more than 50 years after her birth. Such belated challenges would be destructive of family harmony and stability and would undermine familial relationships long presumed to exist." (*Jotham, supra*, 722 N.W.2d at p. 455.) We agree with these observations.

▮ In any event, apart from the limitations period prescribed in section 7630, subdivision (a)(2), Scott's lack of standing to challenge Thompson's paternity under the marital presumption eviscerates her claim (§ 7630, subd. (a)). In sum, because the wrongful death statute incorporates the Probate Code's intestacy chain of succession to determine proper plaintiffs, and the intestacy statutes in turn incorporate the UPA to determine presumed fatherhood, and Scott has no standing under the UPA to deny or rebut that Thompson is Michael's presumed father, her action for a declaratory judgment rejecting Thompson's paternity fails as a matter of law. Consequently, there is no basis to reverse the trial court's entry of judgment against her.[4]

---

[3] In full, section 7630, subdivision (a) provides: "A child, the child's natural mother, a man presumed to be the child's father under subdivision (a), (b), or (c) of [s]ection 7611, an adoption agency to whom the child has been relinquished, or a prospective adoptive parent of the child may bring an action as follows: [¶] (1) At any time for the purpose of declaring the existence of the father and child relationship presumed under subdivision (a), (b), or (c) of [s]ection 7611. [¶] (2) For the purpose of declaring the nonexistence of the father and child relationship presumed under subdivision (a), (b), or (c) of [s]ection 7611 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party."

[4] Scott asserts in a petition for rehearing that she has a constitutional right to challenge Thompson's paternity under the marital presumption, in order to displace him as the proper

II

## DISPOSITION

The judgment is affirmed and the stay is dissolved. Respondents are entitled to their costs on appeal.

Rylaarsdam, Acting P. J., and Ikola, J., concurred.

A petition for a rehearing was denied June 25, 2010, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 1, 2010, S184168.

---

wrongful death plaintiff. By a separate order, we denied the petition. Scott's attempt to imbue the case with a consitutional dimension fails because, as noted, the right to sue for another's wrongful death is purely a creature of statute. (See, e.g., *People v. Giordano* (2007) 42 Cal.4th 644, 659 [68 Cal.Rptr.3d 51, 170 P.3d 623].) There is no consitututional basis for Scott's claim because the wrongful death cause of action is not an inherent right (*Pritchard v. Whitney Estate Co.* (1913) 164 Cal. 564, 568 [129 P. 989]), nor a vested right (*Krause v. Rarity* (1930) 210 Cal. 644, 653 [293 P. 62]), but rather one within the discretion of the Legislature to grant, withhold, or restrict (*Norman v. Murphy* (1954) 124 Cal.App.2d 95, 99 [268 P.2d 178]). As we have discussed, the Legislature in section 7630(a) has unambiguously foreclosed Scott's ability to establish standing as the proper wrongful death plaintiff here. Scott must take her disagreement with this policy choice to the Legislature, not the courts. (See, e.g., *Estate of Horman* (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785] ["Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature."]; *In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 628 [60 Cal.Rptr.3d 39] ["The Legislature declares state public policy, not the courts."].)