Filed 4/28/16  Estate of Gaspar CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Estate of JOHANNA E. GASPAR, Deceased. | |
| JACK CRLENJAK,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>HUMBOLDT LAND TITLE COMPANY,<br><br>        Defendant and Respondent. | A142068<br><br>(Humboldt County<br>Super. Ct. No. DR110599) |

Plaintiff Jack Crlenjak appeals from a judgment of dismissal following Humboldt Land Title Company's demurrer to his fourth amended complaint.  Crlenjak served as the attorney for the estate of a long-time client, Johanna Gaspar.  The estate consisted largely of three parcels of property.  The first two were sold without issue.  However, the third was sold without full compliance with notice requirements.  When one of the beneficiaries objected to Crlenjak's final accounting and request for extraordinary fees, claiming Crlenjak had mishandled Gaspar's property both while she was alive and after she died, Crlenjak retained another lawyer to respond on behalf of the estate.  Eventually the probate court approved a final accounting and distribution of the estate, but denied Crlenjak's request for fees.

Crlenjak then filed this lawsuit, claiming the title company had improperly closed escrow on the third property and he had incurred expenses to deal with the problem.  Crlenjak apparently never sought to be paid by the estate for these expenses, and by the

time of the hearing on the demurrer to his fourth amended complaint, he expressly disavowed trying to recover them in his capacity as the lawyer for the estate. Rather, he claimed to have personally incurred the expenses, and thus sought to recover them from the title company in his individual capacity. The trial court concluded Crlenjak alleged no basis to recover personally from the title company and entered a judgment of dismissal.

We affirm. To begin with, Crlenjak's appellate briefing offers virtually no assistance on the salient issues and the dismissal could be upheld on forfeiture grounds, alone. Even overlooking that, his complaint suffers from an overarching problem—lack of standing—and none of Crlenjak's eight causes of action states, or could be amended to state, a viable claim for relief. And even if he did have standing to sue the title company personally, his allegations are deficient for multiple additional reasons. Finally, we reject his challenge to the award of deposition costs to the title company.

## BACKGROUND[1]

The Estate of Johanna E. Gaspar consisted principally of three parcels of real estate. Crlenjak was Gaspar's attorney during her lifetime and was retained to serve as the estate's attorney. "[I]n management of the probate estate administration," Crlenjak "contracted with defendant Humboldt Land Title Company" for title and escrow services related to selling the parcels.

Sales of the first two parcels were uneventful. When a buyer was found for each, Crlenjak sent Notices of Proposed Action to the estate beneficiaries advising them of the sale terms. When no one objected, Crlenjak so informed the title company, and the sales proceeded. As to the third parcel, however, the title company closed without Crlenjak's express approval and without having a Notice of Proposed Action in hand. According to Crlenjak, the sale violated Probate Code requirements.

---

[1] The factual background is derived from the allegations of Crlenjak's complaint and matters which were judicially noticed by the trial court. (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 734, fn. 2.)

After all the sales closed, Crlenjak filed a First and Final Accounting and Report of Executor.  He sought an order of distribution and extraordinary attorney fees.[2]

One beneficiary, Fred Schreiber, Jr., objected.  By way of background, he described how Gaspar, back in 1999, obtained an in-home care provider, Charlene Bradford, following a debilitating stroke.  Bradford apparently convinced Gaspar to sell a 5.5-acre portion of her then undivided 18-acre property.  Crlenjak handled the sale, and, according to Schreiber, allowed the entire 18-acre property to become encumbered by a deed of trust securing Bradford's purchase of the 5.5-parcel.  When Bradford defaulted, the estate, as Crlenjak alleges, had to sue her to recover the 5.5 acres.  Crlenjak then caused the 18 acres to be divided into the three parcels that were eventually sold after Gaspar died.  Schreiber complained in the probate court that Crlenjak's extraordinary fee request was not only inadequately detailed, but also primarily sought recovery of expenses incurred in resolving the botched Bradford sale, a mess assertedly of Crlenjak's own making.  Further, Schreiber claimed entitlement to all of parcel three under Gaspar's will and complained he never received a Notice of Proposed Action regarding the sale.  Schreiber demanded the full sale price obtained, with no deduction of escrow fees or commission as a sanction against Crlenjak.

Crlenjak responded to the Schreiber objection on behalf of the estate and the executor.  He asserted the Bradford sale occurred while Gaspar was alive and was not an estate matter.  He defended his handling of the third parcel, but did not dispute a Notice of Proposed Action was never served.  Instead, Crlenjak faulted the title company for the lapse, stating "[t]he estate attorney [i.e. Crlenjak] instructed" the title company to ensure it had a Notice of Proposed Action before closing.  Moreover, the title company assertedly had assured Crlenjak that even without his instructions it would comply with the legal formalities applicable to probate matters.  Nevertheless, despite Crlenjak's explicit instruction and the title company's assurance it would comply with the Probate Code, the irregular sale had gone forward.  Crlenjak further pointed out Schreiber and his

---

[2] While some of the probate court documents are in the record on appeal, Crlenjak's itemized fee request is not included.

attorney had had actual notice of the proposed sale and its terms, they had never objected, and the sale had been an arm's length transaction at fair market value. Accordingly, Schreiber's interests had not been injured. Crlenjak asked that Schreiber's objection be overruled and Crlenjak's final accounting and fee request be approved, and that the estate be distributed and closed.

At a hearing spanning several days, the probate court took evidence on Schreiber's objection. At this point, Crlenjak represented the executor, and another attorney, Stephen G. Watson,[3] made a special appearance for the estate. The court ultimately overruled Schreiber's objection on the ground he had not sustained any injury from the irregular sale of the third parcel. However, the court denied Crlenjak's request for extraordinary fees. On February 17, 2011, the probate court approved an amended First and Final Accounting and Report and ordered final distribution of the estate.

Approximately five months later, Crlenjak filed this lawsuit against Humboldt Land Title Company. Following several rounds of demurrers, Crlenjak's fourth amended complaint became the operative pleading.

In it, Crlenjak alleged the title company harmed him personally when it breached an alleged duty owed to him and broke an alleged promise not to close any sale of estate property without complying with Probate Code requirements. Crlenjak claimed he had to "mitigate damages" and litigate Schreiber's objection at his own expense because he "was hired and had a duty to his client" to assure the lawful sale of estate property. He asserted eight causes of action: (1) professional negligence, (2) breach of oral contract, (3) false promise, (4) fraud or deceit, (5) negligent misrepresentations, (6) breach of fiduciary duty, (7) breach of covenant of good faith and fair dealing, and (8) violation of escrow regulations.

The title company once again demurred, arguing mainly—as it had in previous demurrers—that Crlenjak lacked standing to sue personally over the improperly noticed sale. If anyone suffered harm, argued the title company, it was the estate, not Crlenjak in

---

[3] Watson represents Crlenjak in this appeal and also represented Crlenjak in the trial court.

his personal capacity.  In support of its demurrer, the title company successfully sought judicial notice of the estate's response to Schreiber's objection and of the related probate court orders.  At the hearing on the demurrer, Crlenjak's attorney attempted to clarify the allegations of injury in the fourth amended complaint by asserting Crlenjak had to hire additional counsel (we presume Watson, although the record does not disclose this) to litigate Schreiber's objection to completion because Crlenjak was a witness to the facts asserted in it.

The trial court ruled Crlenjak lacked standing, sustained the demurrer without leave to amend, and entered a judgment of dismissal.

## DISCUSSION

### *Review of Order Sustaining Demurrer*

"We review de novo the trial court's order sustaining a demurrer."  (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468.)  Our only task is to determine whether the plaintiff's complaint states a cause of action.  (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824.)  We accept as true all well-pleaded allegations, and we will reverse the trial court's order of dismissal if the factual allegations state a cause of action under any available legal theory.  (*Ibid.*; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 (*Evans*).)  We treat respondent's demurrer as admitting all properly pleaded material facts, but not contentions, deductions, or conclusions of fact or law.  (*Evans*, *supra*, 38 Cal.4th at p. 6.)  We also consider matters that may be judicially noticed, and a " ' "complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." ' "  (*Ibid.*)

Where, as here, "the trial court sustains a demurrer without leave to amend, we review the determination that no amendment could cure the defect in the complaint for an abuse of discretion.  [Citation.]  The trial court abuses its discretion if there is a reasonable possibility that the plaintiff could cure the defect by amendment.  [Citation.]  The plaintiff has the burden of proving that amendment would cure the legal defect, and

may meet this burden on appeal.  [Citations.]"  (*Cansino*, *supra*, 224 Cal.App.4th at p. 1468.)

### *Forfeiture of Demurrer Issues*

While Crlenjak's opening brief on appeal recites the applicable standard of review, it does not identify the causes of action he is seeking to resurrect on appeal.  Nor does it provide any argument or analysis in support of any identifiable cause of action.  Rather, the opening brief offers a five-page section entitled "Authorities" that refers to a handful of cases, but does not tie any them to any cause of action in the fourth amended complaint.  Rather, it essentially leaves to the court the job of ferreting out Crlenjak's theories underlying his assorted claims.

However, "[i]ssues do not have a life of their own:  if they are not raised or supported by argument or citation to authority, we consider the issues waived."  (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)  "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties."  (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106; see also *Garcia v. Seacon Logix, Inc.* (2015) 238 Cal.App.4th 1476, 1489.)

Further, an opening brief that fails to properly raise an issue cannot be cured by a robust reply.  (*People v. Jacobs* (2013) 220 Cal.App.4th 67, 83; *Employers Mutual Casualty Co. v. Philadelphia Indemnity Ins. Co.* (2008) 169 Cal.App.4th 340, 349–350.)  Thus, on appeal from a demurrer ruling our review is limited to those issues adequately raised and supported in an appellant's opening brief.  (*WA Southwest 2, LLC v. First American Title Insurance Co.* (2015) 240 Cal.App.4th 148, 155.)

Crlenjak's reply brief does address his various causes of action in greater and lesser degrees of detail, but this effort is too little too late.  "Basic notions of fairness dictate that we decline to entertain arguments that a party has chosen to withhold until the filing of its reply brief, because this deprives the respondent of the opportunity to address them on appeal."  (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 693.)

Under these standards, Crlenjak has forfeited his challenge to the ruling sustaining the title company's demurrer, and we can affirm the judgment of dismissal on this ground, alone. However, even had Crlenjak's opening brief included the arguments belatedly proffered in his closing brief, we would affirm the judgment.

**Standing**

Section 367 of the Code of Civil Procedure provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." "[T]he real party in interest is the party who has title to the cause of action, i.e., the one who has the right to maintain the cause of action." (*Vaughn v. Dame Construction Co.* (1990) 223 Cal.App.3d 144, 147.) Section 367 has been said to embody a requirement that a litigant have "standing" to sue, that is, a legally cognizable invasion of his or her interests. (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175.) " 'Standing generally requires that the plaintiff be able to allege injury, that is, an invasion of a legally protected interest.' " (*Coldren v. Hart, King & Coldren, Inc.* (2015) 239 Cal.App.4th 237, 245; see *Teal v. Superior Court* (2014) 60 Cal.4th 595, 599.)

Lack of standing is a fatal jurisdictional defect to any action. (*Scott v. Thompson* (2010) 184 Cal.App.4th 1506, 1510.) If a complaint shows a plaintiff is not the real party in interest and therefore lacks the standing to sue, a general demurrer lies, even though another party might be a proper plaintiff. (*Klopstock v. Superior Court* (1941) 17 Cal.2d 13, 19.)

Assuming for purposes of analysis that the title company may be liable to someone in connection with the irregular sale of the third parcel, the clearly proper plaintiff would be the executor of the estate suing on its behalf. (4 Witkin, Cal. Proc. 5th (2008) Plead, § 69, p. 129; *Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1395.) As the documents Crlenjak filed in the probate court make clear, he was acting *for the estate* when he retained the title company to handle the real property transactions. As the

*estate's* attorney, Crlenjak was a mere go-between in the transactions and had no interest in the parcels being sold. Thus, it was the estate and the beneficiaries thereof that stood to incur injury if the title company was derelict in handling the transactions. While the estate could have faulted the title company, hired a lawyer, and sought recompense, that would have been the *estate's* choice, not its attorney's choice and certainly not that attorney's choice as a personal matter.[4] (See Legal Ethics, Law. Deskbk. Prof. Resp. § 1.2-2 (2013–2014 ed.) [client, not lawyer, must make major decisions].)

Crlenjak nonetheless claims to have standing to sue the title company in a personal capacity because he allegedly spent his own resources to remediate the problems that arose from the title company's alleged failings in connection with the sale of the third parcel. When pressed in the trial court to identify what these resources were, Crlenjak's attorney—the very same Watson who appeared specially for the estate in the probate court—cited payment of fees to hire "an" attorney to handle the probate court objection. Presumably, Watson was referring to himself as Crlenjak has not otherwise identified the attorney he supposedly hired.

The first problem with this allegation of personal injury, however, is that Crlenjak told the probate court something different, as reflected in the probate court filings of which the trial court properly took judicial notice. (See *Evans*, *supra*, 38 Cal.4th at p. 6 [a " ' "complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." ' "].) The response Crlenjak filed sought to quell Schreiber's objection and convince the probate court to approve Crlenjak's final accounting, authorize distribution of the estate, and award Crlenjak extraordinary fees. The response unequivocally stated Crlenjak interacted with the title company *as the estate's* attorney

---

[4] There is not a hint in the record here that the estate either accused the title company of impropriety in connection with the third sale or made any claim of injury caused by the title company's actions.

and *as the estate's attorney* had instructed the title company to ensure it had a Notice of Proposed Action before closing.

Moreover, the only attorneys who opposed Schreiber's objection when they came up for a hearing were Crlenjak, appearing for the estate's executor, and Watson, appearing specially for the estate. There was no suggestion Watson had not been retained *by the estate*. Indeed, Watson had to have been retained *by the estate* in order to appear on its behalf. (Bus. & Prof. Code, § 6104 ["willfully and without authority appearing as attorney for a party to an action or proceeding constitutes a cause for disbarment or suspension"]; see Paul W. Vapnek et al, Cal. Prac. Guide Prof. Resp. Ch. 11-A, [¶] 11:141; cf. California Rules of Prof. Conduct, Rule 3-310, subd. (F) [a lawyer cannot accept compensation for services from non-client without client's informed written consent].)

In short, Crlenjak's representations to the probate court and Watson's appearance for the estate, confirm Crlenjak was at all times, including when he presumably hired Watson, acting for the estate.

Indeed, Crlenjak's claim of having acted personally to mitigate the estate's supposed problem is so strikingly odd, and so obviously the crux of the standing issue that has been litigated since the demurrer to the original complaint, that one would expect some explanation from him, or from his attorney Watson, as to how and why this all transpired. Yet, all that has ever been proffered are broad brush allegations that Crlenjak interacted on a personal basis with the title company and expended his personal resources to rectify the title company's alleged mishandling of the third sale—allegations irreconcilable with Crlenjak's and Watson's conduct in the probate court.

We therefore conclude, as did the trial court, that Crlenjak lacks standing to assert any claim against the title company for its supposed dereliction in handling the sale of the third parcel. The title company was retained *by the estate* and any injury caused by its mishandling of the sale was incurred *by the estate*. Even if Crlenjak personally paid

Watson or another attorney for providing services *to the estate*, Crlenjak was a volunteer in that regard, as Watson or the other attorney certainly could have billed the estate, and had the estate believed these legal expenses were caused by the title company's mishandling of the sale, *the estate* could have sought damages from the title company. (See *Thompson v. Thompson* (1963) 218 Cal.App.2d 804, 807–808 ["one who voluntarily and without request pays the debt of another cannot recover it back either from the debtor or creditor"]; *Schwarz v. Hatch* (1941) 45 Cal.App.2d 510, 521 ["a volunteer cannot recover the moneys advanced by him"]; *Pendergrass v. Axx* (1931) 111 Cal.App. 478, 481 ["It is a well-established rule of law that a mere volunteer cannot recover the amount of obligations paid by him."].)

### Contract-Based Claims

Even assuming Crlenjak had standing, his claims are deficient in other regards, as well. We turn first to his contract-based claims. To assert a contract claim, a plaintiff must generally be a party to the contract, or be an intended third party beneficiary. (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 130.) Negotiating or arranging a contract for another does not make one a party to it. (*Hatchwell v. Blue Shield of California* (1988) 198 Cal.App.3d 1027, 1034.) While Crlenjak may have had dealings with the title company, he did so, in his own words, "in management of the probate estate administration" and as the attorney for the estate. Thus, the operative contract was between the title company and the estate, not Crlenjak personally.

Nor was Crlenjak a third-party beneficiary of this contract. (See Civ. Code, § 1559 ["A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."].) For there to be a third party beneficiary, the contract must expressly state that purpose. (*Sofias v. Bank of America* (1985) 172 Cal.App.3d 583, 587.) "[I]t is not enough that the third party would incidentally have benefited from performance." (*Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 891.) Here, the alleged contract was an exchange of services by

the title company in connection with the estate's property for fees paid by the estate; there was no contemplation of any personal benefit to Crlenjak. This is made clear by Crlenjak's representations to the probate court—representations made to obtain approval of his final accounting for the estate and in support of his claim for extraordinary fees provided as the attorney for the estate. There was not the faintest suggestion the contract between the title company and the estate was for his personal benefit; and had it been, that would likely have been a breach of his professional duties to the estate.

For these same reasons, Crlenjak cannot state a breach of oral contract claim. Nor can he state a claim for breach of the implied covenant of good faith and fair dealing. " 'The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract.' " (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 711–712.)

### Misrepresentation Claims

Crlenjak's negligent misrepresentation and fraud claims fail because each requires a "misrepresentation of a past or existing material fact." (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 196, 199.) The title company's alleged misrepresentation—that it would comply with Probate Code requirements—is a statement about the future, which is not actionable. (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 402 (*Miles*).)

### False Promise Claim

While an ordinary fraud claim must concern past or existing facts, that is not the case as to promissory fraud. (*Miles*, *supra*, 236 Cal.App.4th at pp. 402–403.) The elements of such a claim are: (1) a promise, (2) an intent at the time the promise is made not to perform, (3) an intent to induce reliance, (4) reasonable reliance, and (5) resulting damages. (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1498 (*Rossberg*); see also *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) "As with any

other form of fraud, each element of a promissory fraud claim must be alleged with particularity." (*Rossberg*, *supra*, 219 Cal.App.4th at p. 1498.)

Here, Crlenjak's representations to the probate court foreclose any claim that the title company made a promise to Crlenjak in his individual capacity and to induce his personal reliance. As discussed, Crlenjak told the probate court he dealt with the title company in the course of managing the estate and, as the attorney for the estate, directed the title company to await his instructions. Additionally, the title company assured Crlenjak (acting as the estate's attorney) it would, in any case, comply with the requirements of the Probate Code. Indeed, Crlenjak maintains he acted in his individual capacity only much later on, long *after* the alleged false promise and the irregular sale, when he claims to have taken it upon himself to pay additional counsel to deal with Schreiber's objection based on the lack of notice of the sale. Crlenjak has not alleged a sufficient causal chain connecting the title company's broken promise *to the estate* and Crlenjak's *personal* decision to use his own money to hire a lawyer to address the fallout from that broken promise. (See *Rossberg*, *supra*, 219 Cal.App.4th at p. 1499 [a plaintiff must " ' " ' "establish a complete causal relationship" between the alleged misrepresentations and the harm claimed to have resulted therefrom' " ' "].)

Additionally, Crlenjak's conclusory allegation that the title company intended to break its promise is alarmingly nonspecific, speculative, and deficient given the state of the record. Crlenjak concedes the title company followed Probate Code requirements with respect to the first two parcels sold. There is no allegation as to why or how the title company would have intended at the *outset* of the relationship, before the sale of *any* of the parcels, not to adhere to its promise as to the third parcel. Nor is there any alleged behavior by the title company or its personnel at the *outset* of the relationship that remotely suggests any such intentionally false promise.

*Professional Negligence*

"The elements of a claim for professional negligence are: ' "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." ' " (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1095.)

The existence of a duty is generally a question of law that may be addressed by demurrer. (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 573.) On this record, we conclude the title company owed no duty to Crlenjak personally. To start, the "general rule is that privity of contract is a requisite to a professional negligence claim" (*Giacometti v. Aulla, LLC* (2010) 187 Cal.App.4th 1133, 1137.) Privity is clearly absent here.

Professionals can, however, sometimes be held liable to third parties who are not in privity of contract under *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*). "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Biakanja*, *supra*, 49 Cal.2d at p. 650.)

Applying these factors, no duty to Crlenjak individually can reasonably be imposed here. As we have discussed, Crlenjak represented to the probate court that he retained the title company in the course of administering the estate, and he dealt with the company as the attorney for the estate. There is simply no reasonable basis for the title company to have anticipated that any dereliction in its services and resulting injury to the

*estate* would have precipitated the individual injury Crlenjak claims, i.e., his voluntary, personal payment of the services *provided to the estate* by Watson or another attorney. The connection between the title company's alleged mistake and Crlenjak's claimed personal damage is remote. There is no particular moral blame attached to the title company's conduct. And there is no need to find a duty to Crlenjak here to deter future harm by a title company. If an executor determines there is any legitimate injury to an estate from the company's mishandling of a transaction, he or she can file suit against the company on behalf of the estate.

None of the cases Crlenjak cites in his reply brief supports imposing a duty in this case. Neither *Lawrence v. La Jolla Beach & Tennis Club, Inc.* (2014) 231 Cal.App.4th 11 nor *Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278 addresses when a professional services provider owes duty of care to third party.

**Breach of Fiduciary Duty**

The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and resulting damages. (*Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 140.) Crlenjak offers no reasoned argument supporting his claim that he, personally, and the title company were in a fiduciary relationship. Indeed, it appears a title company offering escrow services would have no fiduciary duty to a third party. (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711–713.) Further, the representations made to the probate court make clear that any fiduciary relationship was between the title company and the estate, not Crlenjak personally.

**Violation of Escrow Requirements**

Crlenjak's last cause of action asserts a violation of Financial Code section 17414, prohibiting knowingly or reckless disbursement of escrow funds "otherwise than in accordance with escrow instructions." But the Financial Code does not provide a stand-alone private right of action, rather it provides criminal penalties and offers the

Commissioner of Business Oversight the right to seek a $2,500 civil penalty per violation.  (Fin. Code, §§ 17701, 17002; see *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 604; *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 255.)

*Costs*

In addition to challenging the trial court's demurrer ruling, Crlenjak asks us to reverse an award to the title company of its costs in taking Crlenjak's deposition. According to Crlenjak, the deposition was not a reasonable expense solely because it was taken during the pleading stages of the case.  (See Code Civ. Proc., § 1033.5, subd. (c)(2) ["Allowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation."].)

The title company first responds by questioning our jurisdiction to review the award of deposition costs.  The cost order post-dates both the judgment of dismissal and Crlenjak's appeal from that judgment, and Crlenjak never filed a notice of appeal from the order.  The judgment of dismissal did state the title company was entitled to its costs of suit generally, but did not specifically mention deposition costs.  Rather, the deposition cost issue was only litigated through Crlenjak's postjudgment motion to tax.

Recent precedent, however, holds that when a judgment decrees a party's entitlement to costs of suit, an appeal from that judgment will encompass future cost rulings incidental to it (such as specifying the amount of recoverable costs), and a second notice of appeal is not necessary.  (*Green v. County of Riverside* (2015) 238 Cal.App.4th 1363, 1373; *Bertoli v. City of Sebastopol* (2015) 233 Cal.App.4th 353, 364–365; but see *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43 [judgment decreeing entitlement to costs of suit did not determine entitlement to particular element of costs, namely attorney fees, and later award of those costs had to be separately appealed]; *Soldate v. Fidelity National Financial, Inc.* (1998) 62 Cal.App.4th 1069, 1075.)

Taking jurisdiction over the costs issue, we conclude the trial court was not required to deny the title company recovery of deposition costs incurred before the demurrer ruling.  (*Silver v. Gold* (1989) 211 Cal.App.3d 17, 26.)

## DISPOSITION

The judgment is affirmed.  Respondent to recover its costs on appeal.

_____
Banke, J.

We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.




A142068