Filed 10/1/18; Modified and Certified for Pub. 10/18/18 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| A.G., a Minor, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents. | B282023<br><br>(Los Angeles County<br>Super. Ct. No. TC028173<br>Consolidated w/TC028210) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ross M. Klein, Judge. Reversed and remanded.

Orange Law Offices and Olu K. Orange, for Plaintiff and Appellant.

Harold G. Becks & Associates and Douglas L. Day, for Defendants and Respondents.

———————————————

After an incident with sheriff's deputies, Brian Pickett died, leaving his partner, two biological children, and his partner's child, A.G., whom Brian had raised and held out as his own child. In the subsequent wrongful death action, the trial court held that A.G. lacked standing to sue, and entered judgment against him. With apologies to Sigmund Freud, biology is not destiny. We reverse.

## FACTUAL AND PROCEDURAL HISTORY

In a consolidated Fourth Amended Complaint against the County of Los Angeles and the Los Angeles County Sheriff's Department, Tamai Gilbert, as guardian ad litem for her children Brian and Micah Pickett, and Tamara Ford, as guardian ad litem for her grandson A.G., sued defendants for assault, battery, negligence, wrongful death, and violation of civil rights. They alleged that on January 6, 2015, the decedent, Brian Pickett,[1] had an encounter with members of the Sheriff's Department, which led to his death. Tamai Gilbert was Pickett's partner, and the mother of his biological sons, Brian and Micah, as well as the mother of A.G. A.G. sued as Pickett's surviving child.

Defendants moved for summary judgment and summary adjudication on December 1, 2016, asserting, as relevant to this appeal, that A.G. was not a surviving child of Pickett, and had no standing to sue. Citing Tamai's deposition testimony that Pickett was not A.G.'s biological father, defendants argued that A.G. had no standing under Code of Civil Procedure section 377.60, governing wrongful death actions.

---

[1] Brian Pickett and his son share a first and last name. Decedent, the father, will be referred to as Pickett.

Opposing the motion, A.G. argued that Pickett, having accepted A.G. into his home and held him out as his natural son, was A.G.'s presumed father pursuant to Family Code section 7611, subdivision (d). This argument was supported by Tamara Ford's declaration that Pickett held A.G. out, and treated him as, his son. In addition, Tamai testified in her deposition that Pickett had agreed, from the time he had met Tamai, when A.G. was one year old, to be his father; A.G.'s father was not involved in A.G.'s life at any time prior to Pickett's death. Accordingly, A.G. argued he had standing to sue. In reply, defendants argued that the Family Code had no application to the determination of standing. Instead, they argued that the relevant statute was Code of Civil Procedure section 377.60 subdivision (c), which required the minor to have resided in the decedent's household for 180 days prior to the death.

The trial court heard the matter on February 15, 2017, and granted summary judgment against A.G. The trial court concluded that the presumption of parentage established in Family Code section 7611 has no application to standing. The trial court subsequently denied A.G.'s motion for a new trial and entered judgment. A.G. appealed.

## DISCUSSION

A. We Review The Grant Of Summary Judgment De Novo

"A motion for summary judgment is properly granted only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citation.]" (*Chavez v. Glock,*

3

*Inc.* (2012) 207 Cal.App.4th 1283, 1301.) "It is well established that, as the party moving for summary judgment, Respondents had the 'initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' (*Aguilar, supra,* 25 Cal.4th at p. 850.) 'A prima facie showing is one that is sufficient to support the position of the party in question.' (*Id.* at p. 851.) To satisfy its initial burden, a defendant must 'present evidence and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence.' (*Id.* at p. 854, fn. omitted.) The defendant may satisfy this requirement in one of two ways: First, it may 'present evidence that conclusively negates an element of the plaintiff's cause of action.' (*Id.* at p. 855.) In the alternative, defendant 'may … present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing.'" (*Ibid.*) (*Hypertouch, Inc. v. ValueClick, Inc.* (2011) 192 Cal.App.4th 805, 838.)

In this case, the trial court ruled, as a matter of law, that the presumption of parentage was irrelevant to the determination of A.G.'s standing to sue for wrongful death. Because the defendants failed to meet their burden on summary judgment, we reverse.

### B. Defendants' Arguments On Appeal

On appeal, defendants make several arguments. First, they assert that because A.G. is not the biological child of Pickett, he does not meet the requirements under Code of Civil Procedure section 377.60, subdivision (a) as a child of the decedent. This argument was the basis for their motion. They then argue that,

4

as an unadopted stepchild, A.G. also lacks standing under Probate Code section 6450.  Next, they return to the argument asserted in the trial court that A.G. fails to meet the requirements of Code of Civil Procedure section 377.60, subdivision (d).  Finally, defendants argue that cases relied on by A.G. at the trial court, *Cheyanna M. v. A.C. Neilson Co.* (1998) 66 Cal.App.4th 855 (*Cheyanna M.*), and *Scott v. Thompson* (2010) 184 Cal.App.4th 1506 (*Scott*), do not apply to this case.

Defendants' arguments on appeal in part relate to issues not before this Court; A.G. has never claimed to have standing based on Code of Civil Procedure section 377.60, subdivision (c), or as an unadopted stepchild.  He has instead asserted that his standing arises from Pickett's status as his presumed parent, a status defendants assert cannot exist because Pickett is not A.G.'s biological parent.

C. Defendant's Relevant Arguments Fail As A Matter of Law On The Record Before This Court

1. The Statutory Scheme Recognizes Presumed Parentage for Standing

The right to sue for wrongful death is determined by statute in California.  Code of Civil Procedure section 377.60, subdivision (a) permits, among others, the children of a decedent, or their personal representative, to sue.  Probate Code section 6450, which applies in situations like the one presented to this court, where the decedent dies intestate, provides that the relationship of parent and child exists "between a person and the person's natural parents."  In turn, the Probate Code establishes that "[a] natural parent and child relationship is established where that relationship is presumed and not rebutted pursuant to the Uniform Parentage Act (UPA), (Part 3 (commencing with § 7600) of Division 12 of the Family Code."  (Prob. Code, § 6453,

5

subd. (a).)  Thus, the statute "contains the rules for determining who is a 'natural parent.'"  (*Estate of Burden* (2007) 146 Cal.App.4th 1021, 1026.

The Family Code provides, in section 7601, that a "natural parent" is "a nonadoptive parent established under this part, whether biologically related to the child or not."  Section 7611 defines a presumed parent.  As relevant here, a presumed parent is one who "receives the child into his or her home and openly holds out the child as his or her natural child."  (Fam. Code, § 7611, subd. (d).)

2.  A Non-Biological Parent Can Be A Presumed Parent

The presumption of parentage is rebuttable.  In 2002, the Supreme Court confronted the question whether the admission by a presumed father that he was not the biological father of the child necessarily rebutted the presumption.  (*In re Nicholas H.* (2002) 28 Cal.4th 56.)  In that case, in a dependency proceeding, the presumed father had taken the child into his home, and held him out as his child; the biological father was not involved in the child's life.  The juvenile court found that the biological facts did not rebut the presumption, and placed the child with the presumed father.  The Court of Appeal reversed, but the Supreme Court disagreed.  Because the presumption is rebuttable in an "appropriate action," the Court concluded the legislature did not intend the fact of biology alone to rebut the presumption.  *(Id.* at p. 70.)

Subsequently, in *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, the Supreme Court revisited the issue in the case of two same sex parents, only one of whom was biologically related to the children at issue.  The Court noted that *Nicholas H.* had recognized that the "social relationship [of a man

6

who has lived with a child and treated him as his child] is much more important, to the child at least, than a biological relationship of actual paternity. . . .'" (*Elisa, supra,* 37 Cal.4th at p. 121, *quoting In re Nicholas H*.)  The Court also relied on *In re Jesusa V.* (2004) 32 Cal.4th 588, 604), quoting its reasoning that "the statute did not contemplate a reflexive rule that biological paternity would rebut the section 7611 presumption in all cases, without concern for whether rebuttal was 'appropriate' in the particular circumstances." (*Ibid.*)  The Court concluded "a natural parent within the meaning of the UPA could be a person with no biological connection to the child." (*Elisa, supra,* 37 Cal.4th at p. 126.)

Defendants have not asserted, at the trial court or in this Court, that there are facts other than biology that would rebut the presumption in this case.  Indeed, from the time A.G. was one, Pickett was the only father he knew; unrebutted testimony established that Pickett held A.G. out as his child.  Defendants have failed to rebut the presumption.

3. Defendants Fail To Distinguish Relevant Authority

A.G. relies on two cases in support of his argument, which defendants reject.  Both cases, however, support A.G.'s standing.  In *Cheyanna M., supra,* 66 Cal.App.4th 855, Cheyanna brought a wrongful death claim for the death of her biological father who had died before Cheyanna was born, without having ever held her out as his child.  The decedent's parents challenged her right to sue for wrongful death, asserting that she lacked standing because she was not an heir under the laws of intestate succession.  Cheyanna argued that, because decedent died before she was born, it was impossible for him to hold her out as his child, and she could establish paternity by clear and convincing

7

evidence of paternity (Prob. Code, § 6453, subd. (b)(3)), using blood tests. (*Cheyanna M.*, at pp. 859-860.) The trial court rejected her argument, and Cheyanna appealed.

On appeal, the Court reversed the grant of summary judgment, finding that the laws of intestate succession are to be used to determine standing to assert wrongful death claims, and that there were triable issues of fact with respect to the application of those laws. The Court interpreted Code of Civil Procedure section 377.60, subdivision (a), to determine who were defined as children for purposes of that section, and held that the laws of intestate succession must apply. (*Cheyanna M.*, at pp. 864-865.) The Court explained: "David did not have a spouse. Consequently, under the laws of intestate succession, his entire estate would pass to his "issue," if any. (Prob. Code, § 6402, subd. (a).) If David has no "issue," the entire estate goes to his parents. (*Id.*, § 6402 subd. (b).) The "issue" of a person is defined as "all [of] his or her lineal descendants of all generations, with the *relationship of parent and child* at each generation being determined by the definitions of *child* and *parent*." (Prob. Code, § 50, italics added.) "Child" means "any individual entitled to take as a child under this code by intestate succession from the parent whose relationship is involved." (*Id.*, § 26.) "Parent" is defined as "any individual entitled to take as a parent under this code by intestate succession from the child whose relationship is involved." (*Id.*, § 54.)

"[A] *relationship of parent and child* exists between a person and the person's *natural parents*, regardless of the marital status of the natural parents." (Prob. Code, § 6450, subd. (a), italics added.) "Natural parent" is defined by Probate Code section 6453. For purposes of the present case, a biological father

8

is a "natural parent" if "[p]aternity is established by clear and convincing evidence that the father has openly held out the child as his own." (Prob. Code, § 6453, subd. (b)(2).) However, if "[i]t was impossible for the father to hold the child out as his own," the biological father is a "natural parent" if "paternity is established by clear and convincing evidence." (*Id.*, § 6453 subd. (b)(3).)

Thus, if David *could* have held Cheyanna out as his "child," and there is clear and convincing evidence that he did so, Cheyanna would be an heir under the intestacy laws. If it was *impossible* for David to hold Cheyanna out as his "child," she would be an heir if there is clear and convincing evidence of David's paternity." (*Cheyanna M.*, at pp. 866-867.)

The Court was confronted with the issue of whether it was possible for an unborn child to be held out as a person's child, an issue not presented here. Instead, this case falls within the alternative method of determining who is a natural parent. Because defendants do not argue, or present evidence, that Pickett did not hold A.G. out as his own, the issue of biological paternity is irrelevant. In no event, however, does *Cheyanna M.* stand for the proposition that defendants assert, that only a biological child can be the issue of the decedent.

In *Scott, supra*, which defendants also seek to distinguish, the court confronted the competing wrongful death claims of a half sibling, and the presumed father of the decedent. Scott, the sibling, asserted that because blood testing demonstrated that Thompson, the presumed parent, was not a biological parent, he had no standing to sue. The court rejected that argument, finding that the interplay between the Probate Code and the Family Code meant that an unrebutted presumption of presumed

9

parent status provided standing: "In sum, because the wrongful death statute incorporates the Probate Code's intestacy chain of succession to determine proper plaintiffs, and the intestacy statutes in turn incorporate the UPA to determine presumed fatherhood, and Scott has no standing under the UPA to deny or rebut that Thompson is Michael's presumed father, her action for a declaratory judgment rejecting Thompson's paternity fails as a matter of law." (*Scott, supra,* 184 Cal.App.4th at p. 1514.)[2]

Defendants' arguments fail. This record does not rebut the presumption that Pickett was A.G.'s natural parent. Accordingly, defendants failed to meet their burden on summary judgment.

## DISPOSITION

The judgment is reversed, and the matter remanded for further proceedings. Appellant is to recover his costs on appeal.

ZELON, Acting P. J.

We concur:

SEGAL, J.              FEUER, J.

---

[2]    In *Scott*, the court rejected the complaining party's claim of standing to attempt to rebut the presumption. That issue is not presented here, where defendants made no attempt to rebut the presumption. Instead, defendants' argument appears to be that because the attempt in *Scott* was to establish that the claimant was a presumed parent, while A.G. attempts to establish that he had a presumed parent, *Scott* is irrelevant. The *Scott* court's analysis demonstrates that this attempted distinction is without merit.

10

Filed 10/18/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| A.G., a Minor, etc., | No. B282023 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. TC028173 Consolidated w/TC028210) |
| COUNTY OF LOS ANGELES et al., | **ORDER MODIFYING OPINION AND ORDER FOR PUBLICATION** |
| Defendants and Respondents. | |

THE COURT:

The opinion filed on October 1, 2018 was not certified for publication. Because it appears the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request by appellant and certain non-parties pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

Additionally, on page 1, the second paragraph is modified as follows:

1.  Orange Law Offices and Olu K. Orange; Paul Hastings, George W. Abele and Scott M. Klausner, for Plaintiff and Appellant.

There is no change in the judgment.

_____

ZELON, Acting P. J.,       SEGAL, J.,       FEUER, J.