Filed 10/18/23

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| Estate of NICK MARTINO, Deceased. | D080846 |
| NICK ZAMBITO, | |
| Petitioner and Respondent, | (Super. Ct. No. 37-2020-000002011-PR-LA-CTL) |
| v. | |
| TRACEY MARTINO et al., | |
| Objectors and Appellants. | |


APPEAL from an order of the Superior Court of San Diego County, Julia C. Kelety, Judge. Affirmed.

Reich Radcliffe & Hoover, Richard J. Radcliffe and Marc G. Reich for Objectors and Appellants.

Amanda Jereige; Antonyan Miranda and John Melvin for Petitioner and Respondent.

After Nick Martino (Decedent) died intestate, his stepson from a previous marriage, Nick Zambito, petitioned to be deemed an heir. Decedent's biological children, Tracey Martino and Joseph Martino (together, Objectors), objected. After a bench trial, the probate court determined that

Decedent was Zambito's "natural parent" under Probate Code[1] sections 6540 and 6453, which define the "natural parent" and child relationship for purposes of intestate succession.

In this appeal, we conclude that Zambito has standing to claim natural parentage heirship even though he is not the Decedent's biological child. We further conclude that Probate Code section 6454, which provides a pathway for intestate succession by stepchildren and foster children, does not operate to foreclose other available statutory methods for a stepchild to establish a right to intestate succession. Specifically, because section 6453, subdivision (a) defines natural parentage for purposes of intestate succession to include presumed parentage that is not rebutted under the Uniform Parentage Act (UPA) (Fam. Code, § 7600 et seq.), a stepchild may establish a right to intestate succession under Family Code section 7611, subdivision (d), which creates a presumption of natural parentage if "[t]he presumed parent receives the child into their home and openly holds out the child as their natural child." Section 6454 does not preclude this alternative pathway for intestate succession by stepchildren. And in the absence of any challenge to the sufficiency of evidence to support the probate court's factual findings under this theory, we conclude that Objectors have failed to demonstrate any reversible error. Accordingly, we affirm the probate court's order.

FACTUAL AND PROCEDURAL BACKGROUND

Because neither side has disputed the probate court's factual findings or raised a sufficiency of evidence issue, we briefly summarize the facts as stated in its order after trial.

---

[1]    Unless otherwise indicated, all further statutory references are to the Probate Code.

2

*A. Zambito's and Decedent's Relationship*

Zambito's mother, Lula Taylor, married Domenick in November 1960, and Zambito was born six months later in May 1961. Taylor and Domenick divorced a few years later, and Taylor married Decedent in 1966 after they had lived together for about two years. Decedent already had a daughter, Tracey Martino, who was born in 1960 during a previous marriage. After being married for six years, Taylor and Decedent divorced in 1972. During Decedent's subsequent marriage, Joseph Martino was born in 1974. It is undisputed that Decedent was not Zambito's biological father.

For most of their marriage, Taylor and Decedent shared a home in San Diego County and Zambito lived with them. Before and after Taylor and Decedent divorced, Zambito had a close relationship with Decedent, but Zambito had little contact with Domenick. During his childhood, Zambito considered Decedent to be his true father.

After Zambito became an adult, he left California and served in the army for 20 years, but he kept in touch with Decedent. After Zambito retired from the military, he occasionally visited Decedent in San Diego, but when Decedent's health began to fail around 2018, Zambito increased his efforts to visit. Zambito spoke with Decedent often and accompanied Decedent to medical appointments.

Many of Decedent's close personal friends said that in their frequent contacts with Decedent, he always referred to Zambito as his son. Decedent's friends also referred to Zambito as Decedent's son, and in his final years, Decedent maintained a close relationship with Zambito.

*B. Zambito's Petition*

In February 2020, after Decedent's death, Zambito filed a petition seeking an order declaring that he was Decedent's lawful "stepchild heir"

3

pursuant to section 6454. (See § 11700.) Section 6454 provides for intestate succession from a stepparent or foster parent when (1) the relationship with the stepparent or foster parent began during the child's minority and continued throughout their joint lifetimes; and (2) it is proven by clear and convincing evidence that the stepparent or foster parent would have adopted the person but for a legal barrier.[2]

Zambito asserted in his original petition that his parent-child relationship with Decedent began when he was a minor and continued through Decedent's lifetime. He also asserted that Decedent expressed a desire to adopt Zambito, but Domenick objected, which posed a legal barrier to adoption.

Zambito amended his petition in May 2020, conceding that when Domenick died in 2004, a legal barrier to adoption no longer existed. Zambito therefore abandoned his claim pursuant to section 6454, and instead asserted

---

[2]     Section 6454 states, in full: "For the purpose of determining intestate succession by a person or the person's issue from or through a foster parent or stepparent, the relationship of parent and child exists between that person and the person's foster parent or stepparent if both of the following requirements are satisfied:

> "(a) The relationship began during the person's minority and continued throughout the joint lifetimes of the person and the person's foster parent or stepparent.

> "(b) It is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier."

4

heirship under section 6455,[3] which allows for inheritance through equitable adoption.

In January 2021, Zambito filed a second amended petition, this time adding a theory of inheritance under Probate Code section 6453, subdivisions (a) and (b)(2). Those provisions state that a "natural parent and child relationship" is established for intestate succession purposes when (1) the relationship is presumed and not rebutted pursuant to the Uniform Parentage Act (UPA) in the Family Code, or (2) in actions brought under Family Code section 7630, subdivision (c), where clear and convincing evidence establishes that the parent has openly held out the child as that parent's own. (Prob. Code, § 6453, subds. (a) & (b)(2); see Fam. Code, § 7600, et seq.)

Objectors opposed the second amended petition, arguing that Decedent never intended to adopt Zambito and never held him out as his son. They contended that Zambito "did not share the close, father-son relationship falsely alleged by Zambito." Objectors also argued that Zambito could not claim "natural parentage" because he was not related by blood to Decedent.

Near the end of a five-day bench trial, the court granted Objectors' motion for judgment as to Zambito's equitable adoption claim, ruling that he failed to prove Decedent's intent to adopt. After the trial, however, the court granted Zambito's petition as to heirship under both of his section 6453 theories. (See Prob. Code, § 6453, subds. (a) & (b)(2).) First, applying section 6453, subdivision (a), the court found that Decedent was Zambito's presumed parent under the UPA, pursuant to Family Code section 7611, subdivision

---

3 Section 6455 provides: "Nothing in this chapter affects or limits application of the judicial doctrine of equitable adoption for the benefit of the child or the child's issue."

5

(d), which applies when "[t]he presumed parent receives the child into their home and openly holds out the child as their natural child." The court noted that the relationship between a petitioner and decedent need not be biological to establish a presumption of parentage under the UPA. The court further found that Objectors failed to rebut the presumption of parentage (see Fam. Code, § 7612, subd. (a)), and that any competing presumption that Domenick was Zambito's natural parent should not control (see *id*., subd. (b)[4]). Second, the court also found that Zambito met his burden, under his alternative theory pursuant to section 6453, subdivision (b)(2), of showing that Decedent openly held him out as his son.

More specifically, the probate court made factual findings that the relationship between Decedent and Zambito began in Zambito's childhood and continued over fifty years until Decedent's death; that the relationship was that of a child to a parent; that Decedent received Zambito into his home both in Zambito's childhood and when he was an adult; and that Decedent held out Zambito as his natural child throughout Zambito's life. The court made all of its factual findings by clear and convincing evidence.

Objectors timely appealed. They do not challenge the sufficiency of evidence to support any of the probate court's factual findings.

---

[4] Family Code section 7612, subdivision (b), provides in relevant part:

"If two or more presumptions arise under [Family Code] Section 7611 that conflict with each other, or if one or more presumptions under [Family Code] Section 7611 conflict with a claim by a person identified as a genetic parent pursuant to [Family Code] Section 7555, the presumption that on the facts is founded on the weightier considerations of policy and logic controls."

DISCUSSION

Objectors first argue that Zambito lacked standing to claim "natural parentage" for heirship purposes because it is undisputed that he is not Decedent's biological child. In response, Zambito contends that a petitioner need not be biologically related to a decedent to establish "natural parentage" under the UPA. This is a question of statutory interpretation based on undisputed facts, which we review de novo. (*Martinez v. Vaziri* (2016) 246 Cal.App.4th 373, 382 (*Martinez*).)

*A. Governing Law*

A "personal representative, or any person claiming to be a beneficiary or otherwise entitled to distribution of a share of the estate, may file a petition for a court determination of the persons entitled to distribution of the decedent's estate." (§ 11700.) " 'Intestate succession is governed entirely by statute.' [Citations.] 'The heirs of a person are those whom the law appoints to succeed at the decedent's death to his or her estate in case of intestacy, by virtue of the statutes of succession.' [Citation.]" (*Estate of Britel* (2015) 236 Cal.App.4th 127, 135 (*Britel*).)

When there is no surviving spouse, the intestate share of the estate passes "[t]o the issue of the decedent, the issue taking equally if they are all of the same degree of kinship to the decedent . . . ." (§ 6402, subd. (a).) " 'Issue' of a person means all his or her lineal descendants of all generations, with the relationship of parent and child at each generation being determined by the definitions of child and parent." (§ 50.) "Child" means "any individual entitled to take as a child under this code by intestate succession from the parent whose relationship is involved." (§ 26.) "Parent" is defined as "any

7

individual entitled to take as a parent under this code by intestate succession from the child whose relationship is involved." (§ 54.)

Sections 6450 through 6455 define "the parent-child relationship for purposes of intestate succession." (*Estate of Ford* (2004) 32 Cal.4th 160, 165.) Under section 6450, a parent-child relationship "exists between a person and the person's natural parents, regardless of the marital status of the natural parents." (§ 6450, subd. (a); *Britel, supra*, 236 Cal.App.4th at p. 135.)

Section 6453 describes how a "child may show whether someone is a natural parent for purposes of intestate succession." (*Estate of Chambers* (2009) 175 Cal.App.4th 891, 895 (*Chambers*); *Britel, supra*, 236 Cal.App.4th at p. 136.) The statute "contains the rules for determining who is a 'natural parent.'" (*Estate of Burden* (2007) 146 Cal.App.4th 1021, 1026.)

As relevant here, Probate Code section 6453 sets forth two different pathways to natural parentage. First, section 6453, subdivision (a) states: "A natural parent and child relationship is established where that relationship is presumed and not rebutted pursuant to the Uniform Parentage Act (Part 3 (commencing with Section 7600) of Division 12 of the Family Code)."[5] (See *Estate of Griswold* (2001) 25 Cal.4th 904, 921.) Thus, the intestacy provisions of the Probate Code defining natural parentage explicitly "incorporate the UPA to determine presumed fatherhood." (*Scott v.*

---

[5]    The substance of this provision has been part of California probate law on intestate succession since California adopted the UPA in 1975. It was first enacted as former Probate Code section 25, subdivision (d). (Stats. 1975, ch. 1244, § 25.) In 1983, it became part of former Probate Code section 6408 (Stats. 1983, ch. 842, § 55), then in 1993, it was moved to what is now Probate Code section 6453, subdivision (a). (Stats. 1993, ch. 529, § 5.) In each of these versions, this provision incorporated by reference the presumed parentage provisions of the UPA, which since 1975 has always included the substance of what is now Family Code section 7611, subdivision (d), formerly Civil Code section 7004, subdivision (a)(4).

*Thompson* (2010) 184 Cal.App.4th 1506, 1514 (*Scott*).) And under the UPA, a man may attain the status of presumed father if he "receives the child into [his] home and openly holds out the child as [his] natural child." (Fam. Code, § 7611, subd. (d); see *Scott*, at p. 1512.)

Second, Probate Code section 6453, subdivision (b) states: "A natural parent and child relationship may be established pursuant to any other provisions of the Uniform Parentage Act, except that the relationship may not be established by an action under subdivision (c) of Section 7630 of the Family Code unless any of the following conditions exist: [¶] . . . [¶] (2) Parentage is established by clear and convincing evidence that the parent has openly held out the child as that parent's own."

By its terms, section 6453, subdivision (b) applies only if a natural parent and parent child relationship is "established pursuant to any other provisions of the Uniform Parentage Act . . . ." In context, this language evidently refers to provisions of the UPA other than the presumed parentage provisions referred to in subdivision (a). Thus, subdivision (b) applies only if a natural and parent child relationship is established under some provision of the UPA other than the presumed parentage provisions.[6]

Finally, section 6454 is a separate provision allowing intestate succession from a stepparent or foster parent. It states:

> "For the purpose of determining intestate succession by a person or the person's issue from or through a foster parent or stepparent, the relationship of parent and child exists between that person and the person's foster parent or

---

6    Neither Zambito nor the probate court identified any such "other provision[]" of the UPA as a basis for applying section 6453, subdivision (b). Because subdivision (b) therefore appears to be inapplicable here, we focus our analysis on the probate court's other theory of intestate succession under Probate Code section 6453, subdivision (a) and Family Code section 7611, subdivision (d).

9

stepparent if both of the following requirements are satisfied:

"(a) The relationship began during the person's minority and continued throughout the joint lifetimes of the person and the person's foster parent or stepparent.

"(b) It is established by clear and convincing evidence that the foster parent or stepparent would have adopted the person but for a legal barrier." (Prob. Code, § 6454.)

Under this statute, the Supreme Court has concluded that the legal barrier to adoption must exist throughout the joint lifetimes of the foster child or stepchild and the foster parent or stepparent, even if the foster child or stepchild is an adult by the time of the decedent's death. (*Estate of Joseph* (1998) 17 Cal.4th 203, 211–216 (*Joseph*); see Fam. Code, § 9300, subd. (a) ["An adult may be adopted by another adult, including a stepparent . . . ."].)

*B. Analysis*

Objectors first assert that Zambito lacks standing to assert a claim of natural parentage for heirship purposes solely because he is not the Decedent's biological child. We find no authority for that position under contemporary California law, and ample support to the contrary.

As noted, for purposes of intestate succession, section 6453, subdivision (a) incorporates by reference the presumed parentage provisions of the UPA, including Family Code section 7611, subdivision (d). The UPA in turn defines a "natural parent" as "a nonadoptive parent established under this part, *whether biologically related to the child or not*." (Fam. Code, § 7601, subd. (a), italics added.)

The plain language of this statute defeats Objectors' argument based on biology. It makes no difference that this provision appears in the portion of the Family Code incorporated by reference into the Probate Code, rather

10

than in the Probate Code itself.  When two codes are to be construed, they must be regarded as blending into each other and forming a single statute. (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955 (*Public Health*).)

Our Supreme Court has also made clear that a biological connection is not required to establish presumed parentage by someone who receives a child into his home and openly holds out the child as his natural child under Family Code section 7611, subdivision (d).  (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 120–124; *In re Nicholas H.* (2002) 28 Cal.4th 56, 62–70.)

Other California courts have similarly found that a man "with no biological connection to the child, no marital connection to the mother, and no way to satisfy the statutory presumption of paternity may nevertheless be deemed a presumed father" under Family Code section 7611, subdivision (d), if he can prove "an existing familial relationship with the child," a bond the likes of which " 'should not be lightly dissolved.' "  (*In re D.M.* (2012) 210 Cal.App.4th 541, 554 (*D.M.*); *A.G. v. County of Los Angeles* (2018) 28 Cal.App.5th 373, 380 [rejecting argument that standing to sue based on presumed parentage requires biological relationship].)  Indeed, in *Britel*, the court found that even *having* a biological relationship was not dispositive of whether someone was a natural parent within the meaning of Probate Code sections 6450 and 6453.  (*Britel*, *supra*, 236 Cal.App.4th at p. 136.)  Along those lines, the court in *In re A.A.* (2003) 114 Cal.App.4th 771 (*A.A.*), found that a child's *nonbiological* father had presumed father status over her biological father because the nonbiological father met the requirements in Family Code section 7611, subdivision (d), while her biological father did not. (*Id.* at p. 784.)  The "elevated status" of presumed parenthood is intended to

11

" 'distinguish those who have demonstrated a commitment to the child regardless of biology . . . .' " (*Martinez*, *supra*, 246 Cal.App.4th at p. 377.)

In *In re Alexander P.* (2016) 4 Cal.App.5th 475 (*Alexander P.*), the court specifically found that a stepfather qualified as a presumed parent under Family Code section 7611, subdivision (d). (*Id.* at pp. 479–480, 492–496.) The court noted that " ' "[b]iological fatherhood does not, in and of itself, qualify a man for presumed father status under [Family Code] section 7611. On the contrary, presumed father status is based on the familial relationship between the man and child, *rather than any biological connection*." ' " (*Id.* at p. 485, italics added.) Moreover, the requirement that the presumed parent openly hold out the child as his "natural child" (Fam. Code, § 7611, subd. (d)) "does not require proof that the presumed parent claims the child as his or her *biological* child." (*Alexander P.*, at p. 493.) In other words, the statute "does not require a presumed parent who is not a biological parent to pretend otherwise." (*Ibid.*)

Although Objectors attempt to distinguish these and similar cases involving the UPA because they do not involve the specific heirship fact pattern here, they cannot avoid the fact that the intestacy provisions of the Probate Code explicitly "incorporate the UPA to determine presumed fatherhood." (*Scott*, *supra*, 184 Cal.App.4th at p. 1514.) As noted, " '[t]he heirs of a person are those whom the law appoints to succeed at the decedent's death to his or her estate in case of intestacy' " (*Britel*, *supra*, 236 Cal.App.4th at p. 135, italics omitted), and section 6453, subdivision (a), defines such a category of heirs with express reference to the UPA. Thus, California law governing the presumed parentage provisions of the UPA is applicable in determining intestate succession under the Probate Code. (See, e.g., *Wehsener v. Jernigan* (2022) 86 Cal.App.5th 1311, 1324, 1327 (*Wehsener*)

[couple who took abandoned nonbiological child into their home were presumed parents of child for purposes of intestate succession under Probate Code section 6453, subdivision (a) and Family Code section 7611, subdivision (d)].)

Objectors point to the Law Revision Commission Comments accompanying sections 26 (defining "child") and 54 (defining "parent"), to argue that the Probate Code defines "child" to mean "biological child." Specifically, Objectors rely on comments noting that a stepchild is not included within the meaning of "child," and a stepparent is not included within the meaning of "parent," *on the basis of that relationship alone.* (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code (2002 ed.) foll. § 26, p. 27 [stepchild "is not included within the meaning of 'child' only on the basis of that relationship"]; Cal. Law Revision Comm. com., 52 West's Ann. Prob. Code (2002 ed.) foll. § 54, p. 49 [stepparent "is not included within the definition of 'parent' on the basis of that relationship alone"].) But those comments do not purport to preclude a stepchild from establishing a natural parent and child relationship based on facts *other* than just the stepparent/stepchild relationship, such as a presumed parent relationship under Probate Code section 6453, subdivision (a) and Family Code section 7611, subdivision (d).

## II

In an effort to circumvent the UPA's prioritization of the familial nature of a parent-child relationship over the biological connection, Objectors reprise an argument on appeal that they raised for the first time during closing arguments at trial: that section 6454 is the exclusive path to heirship for Zambito as an unadopted stepchild. According to Objectors, Zambito was required to bring his petition under section 6454—a pathway he abandoned

13

because he could not show that a legal barrier to adoption persisted until Decedent's death.

We disagree. Nothing in the Probate Code says that a stepchild is precluded from establishing the existence of a natural parent and child relationship under Probate Code section 6453, subdivision (a) and incorporated provisions of the UPA, including Family Code section 7611, subdivision (d). These provisions do not contain any exception for stepchildren. Under normal rules of statutory construction, a statute is presumed to govern every case in which it applies by its terms—unless some other statute creates an express exception. (*Tan v. Appellate Division of Superior Court* (2022) 76 Cal.App.5th 130, 139.) Section 6454 is not framed as an express exception to section 6453 and does not state that it is the *exclusive* method for a stepchild to establish intestate succession. Moreover, courts may only read an implied exception into a statute when necessary to harmonize two irreconcilable provisions or ensure that the Legislature does not enact a nullity. (*Santa Clarita Organization for Planning & the Environment v. Abercrombie* (2015) 240 Cal.App.4th 300, 319.)

We conclude that sections 6453 and 6454 can be harmonized without creating an implied exception to either statute or rendering one a nullity. " 'A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions.' [Citations.]" (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805.) This rule applies even where, as here, " 'one of the statutes involved deals generally with a subject and another relates specifically to particular aspects of the subject.' [Citation.]" (*Ibid.*) When construing two codes, "they 'must be read together and so construed as to give effect, when possible, to all the provisions thereof.'

14

[Citations.]" (*Ibid.*) Our Supreme Court has harmonized potentially conflicting statutes by "choosing one plausible construction of a statute over another in order to avoid a conflict with a second statute. [Citations.]" (*Public Health*, *supra*, 60 Cal.4th at p. 956.)

The harmonization rule focuses on the texts of the statutes, not their purposes, and asks whether the texts can be harmonized. (*Public Health*, *supra*, 60 Cal.4th at p. 956; *People v. Superior Court of Riverside County* (2022) 81 Cal.App.5th 851, 874 (*Riverside County*).) Comparing their texts, we conclude that sections 6453 and 6454 are not irreconcilable and can be harmonized to give both effect because each section may apply to different situations, each has requirements the other does not, and neither expressly prohibits what the other permits. (See *Riverside County*, at p. 873 [harmonizing statutes that are not so inconsistent that they "cannot have concurrent operation[]"].)

For example, someone who is neither a stepchild nor a foster child could not obtain heirship under section Probate Code 6454, but could still seek heirship under section 6453. Under Probate Code section 6453, subdivision (a), one can establish a "natural parent and child relationship" by showing, pursuant to Family Code section 7611, subdivision (d), that the "presumed parent receive[d] the child into their home and openly [held] out the child as their natural child." (Fam. Code, § 7611, subd. (d).) While section 6454, subdivision (a), requires that the relationship begin in the child's minority and continue "throughout the joint lifetimes" of the child and parent, there is no such durational requirement for how long a parent "receives the child into their home" under Family Code section 7611, subdivision (d). (See *W.S. v. S.T.* (2018) 20 Cal.App.5th 132, 145 ["A father does not need to receive the child into his home for a specific period of time,

although cohabitation for an extended period of time may strengthen a claim for presumed parent status"]; *Jason P. v. Danielle S.* (2017) 9 Cal.App.5th 1000, 1021 ["A party seeking to establish he is a presumed parent is not required to show that he acted as a parent to the child for a specific period."].) And while section 6454 requires clear and convincing evidence that the parent would have adopted the petitioner "but for a legal barrier," there is no such requirement in section 6453 or Family Code section 7611.

Conversely, someone could qualify for intestate succession under section 6454, but not section 6453. Section 6454 does not require that the stepparent or foster parent receive the child into their home or hold the child out as their natural child. Whereas Family Code section 7611, subdivision (d), places emphasis on the child living in or at least visiting the presumed parent's home, section 6454 makes no mention of "home." (See *D.M.*, *supra*, 210 Cal.App.4th at p. 550 [supervised two-hour visits between mother's boyfriend and child at a third-party's home were insufficient to show boyfriend received the child into *his* home for purposes of Family Code section 7611, subdivision (d)]; *A.A.*, *supra*, 114 Cal.App.4th at p. 784 [finding nonbiological father received child into his home, even though she did not live with him, because she visited him there].) Section 6454, subdivision (a), instead focuses on the continuity of the familial relationship, regardless of where the parent or child resides. (See *Estate of Stevenson* (1992) 11 Cal.App.4th 852, 860 [holding that section 6454's predecessor "does not expressly require continuity in living arrangements as a prerequisite for a continuous relationship[]"].)

We therefore conclude that the texts of the statutes can be harmonized without reading a judicial exception into section 6453 for stepchildren and foster children. Both statutes can be given effect in the specific

16

circumstances they apply without rendering the other a nullity. Neither permits intestate succession when the other would forbid it. (See *Riverside County*, *supra*, 81 Cal.App.5th at p. 874 ["nothing in the statutes' texts prohibits interpreting them together"].)

This interpretation is not inconsistent with *Joseph*, which analyzed section 6454 and found that to inherit under that provision, the legal barrier to adoption must have continued to exist through the joint lifetimes of the child and decedent. (*Joseph*, *supra*, 17 Cal.4th 203 at pp. 206–207.) Objectors contend that *Joseph* forecloses a stepchild from pursuing heirship under section 6453, but the opinion in that case made no reference to section 6453. While the Supreme Court noted in *Joseph* that historically, stepchildren were excluded from the definition of "child," the Court recognized that the Probate Code eventually provided a pathway for stepchildren to inherit in the manner prescribed by section 6454. (*Joseph*, at pp. 210–211.) Contrary to what Objectors contend, at no point did the Court state that section 6454 was the *only* pathway to intestate succession available to a stepchild.[7]

---

[7] Other cases cited by Objectors did not decide this issue either. (*Steed v. Imperial Airlines* (1974) 12 Cal.3d 115, 118–126 [unadopted stepchild was not "heir" who could sue for wrongful death under provisions of Probate Code predating extensive amendments to intestate succession in early 1980s]; *Estate of Cleveland* (1993) 17 Cal.App.4th 1700, 1704–1708 [same issue as *Joseph*]; *Chambers*, *supra*, 175 Cal.App.4th at pp. 894–897 [clear and convincing evidence standard required under Probate Code section 6453, subdivision (a) and Family Code section 7630, subdivision (c)].) Although *Chambers* concluded that the probate court had erred by relying on Family Code section 7611, subdivision (d) "by way of Probate Code section 6453, subdivision (a)" where the presumed father was deceased (*Chambers*, at p. 895), this holding was based on language in former Family Code section 7630, subdivision (c) that has since been deleted from the statute. (See *V.S. v. M.L.* (2013) 222 Cal.App.4th 730, 734 [2010 amendment deleted language

Finally, we can think of no compelling reason why the Legislature would have made someone in Zambito's position eligible for heirship under section 6454, but *not* under section 6453, just because his mother was once married to Decedent. By that logic, Zambito would have been better off, for inheritance purposes, if Decedent had never married Zambito's mother. This would not serve the Legislature's strong public policy favoring marriage, " 'rooted in the necessity of providing an institutional basis for defining the fundamental relational rights and responsibilities of persons in organized society.' [Citation.]" (*Koebke v. Bernardo Heights Country Club* (2005) 36 Cal.4th 824, 844.) Harmonizing sections 6453 and 6454 as alternative pathways to inheritance thus avoids an illogical result. (*John v. Superior Court* (2016) 63 Cal.4th 91, 96 ["We construe the statute's words in context, and harmonize statutory provisions to avoid absurd results."].)

This is also consistent with our recent decision in *Wehsener*, *supra*, 86 Cal.App.5th 1311. There, a couple took an abandoned two-year old child (Judy) into their home and raised her as their own. After the husband died without a will many decades later, we affirmed the probate court's ruling that Judy was his intestate heir applying a natural parentage theory under Probate Code section 6453, subdivision (a) and Family Code section 7611, subdivision (d). (*Wehsener*, at pp. 1314–1315, 1324–1328.) Although *Wehsener* did not decide the issue, it would be peculiar for the Legislature to allow this as a valid theory of intestate succession from natural parents who raised but have *no* biological connection to the child (as in *Wehsener*), but not in otherwise comparable circumstances when the decedent raised the child with a spouse who *was* the child's biological parent. We must give statutes "a

from subdivision (c) making it applicable "to a child who has no presumed father under Section 7611 or whose presumed father is deceased"].)

18

reasonable and common-sense construction consistent with the apparent purpose and intention of the lawmakers—a construction that is practical rather than technical, and will lead to wise policy rather than mischief or absurdity." (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1303.)

Accordingly, we conclude that Zambito did not lack standing to pursue heirship under Probate Code section 6453, subdivision (a) and Family Code section 7611, subdivision (d) merely because he was not Decedent's biological son.[8] As noted, Objectors do not otherwise challenge the sufficiency of evidence to support the probate court's findings on heirship under this theory of natural parentage. Thus, Objectors have failed to demonstrate any error in the probate court's ruling.

III

Objectors next contend that Zambito was judicially estopped from claiming Decedent was his "natural parent" because in an earlier probate proceeding in Nevada, he claimed that Domenick was his "natural father." They also assert that the probate court erred by denying their request for a statement of decision on this issue as untimely. We conclude that Objectors

---

[8] To the extent Objectors are asserting that Zambito lacked standing under Family Code section 7630, we reject this argument as well. Zambito had standing under Probate Code section 11700, which authorizes a petition by any person claiming to be entitled to distribution of a share of the estate. Even assuming that Family Code section 7630's standing requirements also apply to a probate proceeding (which we need not decide), subdivision (b) permits "[a]ny interested party" to bring an action to establish a presumed parent relationship under Family Code section 7611, subdivision (d). As the trial court ruled, "the child seems like they would be the most interested person." Although Objectors argued to the contrary below, they do not do so on appeal.

19

have forfeited the judicial estoppel issue, and in any event, any error would be harmless because the issue lacks merit.

In their response to Zambito's petition, Objectors asserted nine boilerplate "affirmative defenses," each consisting of a single conclusory sentence without supporting facts. These "defenses" were: failure to state a claim, lack of capacity, unclean hands, unjust enrichment, misjoinder or nonjoinder, laches, estoppel, waiver, and statute of limitations. With regard to estoppel, the response merely asserted: "Estoppel: The Petition and its purported causes of action are barred in whole or [in] part due to the doctrine of estoppel." Objectors did not specify that they were asserting *judicial* estoppel or mention anything about the Nevada probate proceeding.

The parties' joint trial readiness conference report listed the legal issues in dispute. It again did not mention judicial estoppel. One of the listed issues was "whether [Objectors] have sufficient evidence to establish their affirmative defenses." During trial, Objectors introduced into evidence documents from the Nevada probate proceeding, including Domenick's will stating that he was the "natural father of Nick Anthony Zambito", Zambito's petition for probate of the will identifying himself as Domenick's "son", and the Nevada probate court's order admitting the will to probate. Zambito also testified at trial about inheriting from Domenick's estate. However, Objectors' counsel never argued judicial estoppel at any point during the trial, including in closing arguments. In closing arguments, Objectors' counsel referred to the Nevada probate proceeding only to argue that any "presumption under section 7611 is rebutted by a [Nevada] judgment establishing parentage of the child by another person."

Counsel for both sides submitted the matter for decision immediately after closing arguments on April 22, 2022. On May 5, 2022, the court issued

20

its order granting Zambito's petition. Three weeks later, Objectors for the first time requested a statement of decision on judicial estoppel.

In these circumstances, we conclude that Objectors forfeited their claim of judicial estoppel by failing to properly assert or develop it in a timely manner in the probate court. (*Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1127.) Their response to Zambito's petition asserted only a generic "estoppel" defense without specifying *judicial* estoppel and without pleading any supporting facts. There are multiple forms of estoppel in California law, including equitable estoppel, collateral estoppel, promissory estoppel, and election of remedies. Objectors never mentioned *judicial* estoppel *or* the factual basis for it until after the trial had concluded, the matter had been submitted, and the probate court had issued its order of May 5, 2022 granting Zambito's petition. The probate court was not required to guess what form of estoppel Objectors were asserting or what facts they were basing it on. Nor was it required to rule on a defense theory not properly asserted until after the matter was fully tried, argued, and submitted. Thus, the issue is forfeited. (See *Lee v. West Kern Water Dist.* (2016) 5 Cal.App.5th 606, 630 [defendants "forfeited a defense of judicial estoppel by failing to raise it until after the jury returned its verdict"]; *Colony Ins. Co. v. Crusader Ins. Co.* (2010) 188 Cal.App.4th 743, 751 ["Because Colony failed to raise the issue of waiver/estoppel until its post-trial objections to the statement of decision, it forfeited the argument"].)

Even if the issue were preserved, however, and even assuming the probate court erred in failing to issue a statement of decision on judicial estoppel, we would still find any error to be harmless because we independently conclude that the defense lacks merit. (*F.P. v. Monier* (2017)

21

3 Cal.5th 1099, 1108 [erroneous failure to issue statement of decision is subject to harmless error review].)

Objectors argue that judicial estoppel applies in this case because Zambito's position in the current proceeding is contrary to the position he took when inheriting from Domenick. Judicial estoppel is aimed to prevent a party from "changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process . . . ." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) "[I]t is well established that, for the doctrine to apply, the seemingly conflicting positions 'must be clearly inconsistent so that one necessarily excludes the other.' [Citation.]" (*Id.* at p. 182.) The party being estopped must also have successfully asserted the first inconsistent position, or in other words, "the tribunal adopted the position or accepted it as true[.]" (*Id.* at p. 184.)

Objectors' judicial estoppel defense lacks merit for two reasons. First, Zambito's assertion in this proceeding that Decedent was his "natural parent" under Probate Code section 6453 was not necessarily inconsistent with Zambito's prior position that he could inherit as Domenick's son under his will. As noted, Family Code section 7601 recognizes that a person can have a "natural parent" who is not one of the two biological parents. (Fam. Code, § 7601, subd. (a).) Subdivision (c) further states that "[t]his part does not preclude a finding that a child has a parent and child relationship with more than two parents." (*Id.*, subd. (c).) In specified circumstances, a court may even find that more than two persons with a claim to parentage under Family Code section 7611 are parents. (Fam. Code, § 7612, subd. (c); see *In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1088–1091.) "There is nothing inherently improper in conferring a right to inherit from two separate

22

paternal stocks."[9]  (*Estate of Bassi* (1965) 234 Cal.App.2d 529, 553 [noting that historically, an adopted child could inherit from both natural father and adoptive father].)

Second, even assuming any inconsistency, there is no evidence that the Nevada probate court made any finding that Domenick was Zambito's biological or natural parent.  Zambito was a named contingent beneficiary in Domenick's will, and because Domenick did not die intestate, the intestate succession provisions did not apply to the distribution of his estate.  (See § 6400.)  Zambito averred that he was Domenick's son, but the documents in the record regarding Domenick's estate—including a Nevada court order admitting Domenick's will to probate—do not make any finding on the issue.  Accordingly, the record does not establish that the Nevada probate court actually adopted or accepted any argument or position of Zambito's that is inconsistent with anything he has asserted in this case.  For both of these reasons, Objectors' judicial estoppel argument would fail on the merits even if it were preserved.

---

9     As an exception to this general rule, "a child of a marriage under the Family Code section 7540 marital presumption is barred from proving a parent-child relationship existed with a deceased third person for purposes of inheritance under intestate succession."  (*Estate of Franco* (2023) 87 Cal.App.5th 1270, 1278, citing *Estate of Cornelius* (1984) 35 Cal.3d 461, 463–464.)  But the conclusive presumption of Family Code section 7540 only applies to "the child of spouses who cohabited at the time of conception and birth."  (Fam. Code, § 7540, subd. (a).)  There is no evidence that Domenick and Taylor were married or cohabited at the time of Zambito's conception; they did not get married until five months before his birth.  Objectors have not argued that *Estate of Cornelius* applies here.

23

DISPOSITION

The order is affirmed.  Respondent shall recover his costs on appeal.


BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P.J.


CASTILLO, J.